FILED

2005 Jun-22  PM 03:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRACEY GEORGE, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 04-AR-0479-S |
| | } | |
| DCI DIALYSIS CLINIC, INC., | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Before the court is the motion for summary judgment of defendant, DCI Dialysis Clinic, Inc. ("DCI"). In her one count complaint, plaintiff, Tracey George ("George"), claims that her former employer, DCI, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by failing to compensate her for all the hours she worked. DCI contends, listing two grounds, that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. First, DCI argues that the statute of limitations bars George's claim related to certain pay periods. Second, DCI argues that George cannot meet her burden of proving an FLSA violation. For the reasons that follow, DCI's motion is due to be granted in part and denied in part.

*Summary Judgment Facts*[1]

DCI provides dialysis services to patients with end-stage renal disease.  George was employed by DCI as a nurse in the acute dialysis unit at a hospital in Birmingham, Alabama, from May 22, 2000, until she resigned on March 28, 2003.  During this entire period, George was an hourly employee.  As an hourly employee, George kept track of her time by using a time clock to punch her start and end times each day.  Prior to 2002, DCI payroll automatically deducted thirty minutes per day from her time for lunch.  During this time period, if George worked through lunch she would write "no lunch" on her time card.  Beginning in 2002, the automatic lunch deductions ceased, and George was expected to clock out if she took a lunch break and clock back in after her lunch.  George's time cards are part of the record, and there is no dispute that the cards accurately reflect the number of hours George actually worked.

To prepare payroll, DCI's bookkeeper took the clock in and clock out times recorded on each employee's time card and rounded each time to the nearest quarter of an hour.  The bookkeeper

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  In accordance with this standard, the following statement of facts includes both undisputed facts and the facts according to the plaintiff's evidence, where there is a dispute.

entered these rounded times into a spreadsheet that reflected the total number of hours worked by the employee for each day of a given pay period.  Sometimes the bookkeeper's rounding resulted in the employee's receiving compensation for a greater number of hours than she actually worked, while other times the rounding resulted in the employee's receiving compensation for fewer hours than she actually worked.  Fred Steading ("Steading"), the clinic administrator, reviewed the bookkeeper's calculations and then transmitted them to DCI's corporate office where direct deposit receipts were generated and sent back to the clinic administrator and bookkeeper for final review and distribution to employees.  The spreadsheets for George for each relevant pay period are in the record, and there is no dispute of the fact that they accurately reflect the number of hours for which she was paid.

George noticed a discrepancy between the hours she worked and the hours reflected on her direct deposit receipt or "pay stub" about a year after she began working for DCI.  At that time, George telephoned DCI's bookkeeper.  George explained the discrepancy to the bookkeeper and asked her to explain how DCI was computing hours.  The bookkeeper became "rather abrupt" and told George that sometimes she rounds up and sometimes she rounds down and that "it all comes out in the wash."  George Dep. at 55.  The bookkeeper told George that if she had a problem with that to take it up with Steading.  A few minutes later, George's supervisor, Kay Cronk

3

("Cronk"), approached George and told her not to upset the bookkeeper because Steading was fond of the bookkeeper and would "cut [George's] tits off" if she upset the bookkeeper. George Dep. at 56. George did not mention her complaint to Steading, nor did she complain to the Department of Labor, though she had made complaints to the Department of Labor about other employers on two occasions. The Department of Labor audited DCI's Birmingham facilities in September 2001 and found no problem with the manner in which it compensated non-exempt nurses. George filed her complaint in this court on March 10, 2004.

*Analysis*

George and DCI agree that this case involves a narrow issue: "whether [George] was appropriately compensated for the overtime hours worked as reflected on her time cards." Pl. Brief at 1; Def. Brief at 1. If the rounding procedure employed by DCI did not violate the FLSA, George's claim fails insofar as it depends upon correct applications of DCI's rounding procedure. Also, to the extent the statute of limitations bars recovery of alleged shortages from certain time periods, George's claim fails.

The admittedly accurate documentary evidence, as distinguished from George's characterizations of the facts, is largely undisputed. From those records, it is clear that the rounding process used by DCI led on some occasions to George's being paid for fewer hours than she actually worked and on other

4

occasions to her being paid for more hours than she actually worked.  A regulation promulgated by the Department of Labor under FLSA states that such rounding procedures are an acceptable practice, provided that the practice does not result over time in a failure to fully compensate an employee for all time worked.[2] The presumption underlying this rule is that, just as DCI's bookkeeper told George in 2001, the discrepancy between hours worked and hours paid averages out over time or "comes out in the wash."   The presumption is further justified in this case in that a comparison of George's time cards and payroll records demonstrates that George was overpaid as often as she was underpaid and that, over the course of her employment, she was not underpaid.  Therefore, because there is no reasonable dispute that DCI's rounding practice violated FLSA or § 785.48(b), summary judgment is appropriate insofar as the claim depends upon the **correct application of** DCI's lawful rounding practice.

Having concluded that rounding does not violate the FLSA, George's argument that a three year statute of limitation applies

---

[2] 29 C.F.R. § 785.48(b):

"Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

because of a "willful" violation lacks colorable merit.  29 U.S.C. § 255; *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Viewing the evidence in the light most favorable to George, the bookkeeper's response to her question about the method of calculating hours was certainly dismissive, if not downright offensive.  Nonetheless, because what the bookkeeper said was true in light of George's time cards, pay stubs, and the law; and further because the Department of Labor audited DCI in 2001 and found no fault with DCI's pay practices related to non-exempt nurses, there is no issue that DCI committed a "willful" violation of FLSA sufficient to bring this case within the three year statute of limitation.  Therefore, only alleged underpayments occurring after March 10, 2002, within the applicable two year limitation period, are properly the subject of this FLSA action.

Within this limited universe of alleged FLSA violations – those that are not due to a correct application of DCI's rounding practice **and** took place on or after March 10, 2002 – George must prove that she performed work for which she was not adequately compensated.  *Reeves v. Int'l Telephone*, 616 F.2d 1342, 1351 (5th Cir. 1980).  George relies on her own affidavit in which she lists various instances where she allegedly was not adequately compensated.  Only paragraphs five, nine, ten, and eleven of the affidavit involve incidents that cannot be explained by a fair

6

and correct application of the lawful rounding procedure employed by DCI.[3]  Of these four incidents, only paragraphs five and eleven involve **overtime** – the alleged underpayments referenced in paragraphs nine and ten occurred in weeks where George undisputedly worked fewer than forty hours.  The underpayment referenced in paragraph five is an incident in which George was paid for one less hour of overtime than she should have been based on her timecard and a correct application of DCI's rounding procedure.  The lunch break underpayment referenced in paragraph eleven represents an instance where DCI illogically rounded a clock-in time of 12:22 p.m. to 12:30, when the nearest quarter of an hour would have been 12:15, making George's seventeen minute lunch break into a thirty minute deduction of time.  This was apparently an incorrect application of the DCI's lawful rounding procedure.

DCI urges the court to disregard these two apparent mistakes due to the fact that rounding mistakes worked to George's benefit in other instances.  DCI cites no precedent for this "no harm, no foul" approach, nor is the court tempted to agree that an employer should be able to avoid paying an hourly employee the full amount of overtime required under the FLSA simply because it

---

[3]  George also claims in her affidavit that DCI's records are incomplete.  This argument is specious, as it amounts to nothing more than a complaint that DCI did not submit pay stubs for certain pay periods.  DCI is not required to retain pay stubs, and more importantly, the stubs add nothing to the picture of how many hours George worked and how much she was paid in any given payroll period.

has made other mistakes that favored the employee.

Based on the razor thin evidence that George apparently was shorted approximately one hour and fifteen minutes of overtime, a genuine issue of fact exists precluding entry of summary judgment dismissing the whole case.  The court takes notice of the fact that the evidence is largely undisputed and largely favors DCI, and recognizes that the parties should have reached, and can still reach, a settlement regarding the minimal damages George has suffered based on isolated incidents.  George will not be allowed to introduce at trial a laundry list of payroll grievances resulting from practices that this court has already held to be lawful under the FLSA.

<em>Conclusion</em>

In accordance with the foregoing, DCI's motion for summary judgment will be granted in part and denied in part by separate order.

DONE this 22nd day of June, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

9